IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

JUSTIN GENNOCK,  )  1:11-CV-982  AWI SMS
                 )
    Plaintiff,   )
                 )  ORDER ON DEFENDANT'S
    v.           )  RULE 12(b)(3) MOTION
                 )
LUCAS ENERGY, INC, and DOES 1-20, )
inclusive,       )  (Doc. No. 5)
                 )
    Defendant.   )
_____)

Plaintiff Justin Gennock ("Gennock") filed suit against Defendant Lucas Energy, Inc. ("LEI") based on a purchase of stocks that went awry. LEI moves to dismiss or transfer this case to the District of Nevada under Rule 12(b)((3) based on a forum selection clause. For the reasons that follow, the motion will be denied.

**BACKGROUND**

From the Complaint, in August 2009, Gennock entered into a written agreement ("Written Agreement") whereby he acquired 100,000 warrants/the option to acquire 100,000 shares of LEI stock with a per share stake price of $1. Gennock also obtained 10,000 shares of restricted stock for $6,000. Nothing in the Written Agreement mandated that any shares acquired in the future were to be restricted.

On December 6, 2010, Gennock contacted LEI's CFO, John O'Keefe ("O'Keefe"), about

exercising his option to purchase additional shares of stock. Gennock thought that there may have been an error in the Written Agreement concerning the 100,000 figure, but O'Keefe confirmed that all 100,000 warrants could be converted into shares. O'Keefe also confirmed that Gennock could exercise a portion of the warrants, specifically 30,000 shares for $30,000. In reliance on O'Keefe's statements, Gennock tendered $30,000 to LEI.

On December 13, 2010, O'Keefe told Gennock that there was in fact a clerical error in the Written Agreement, and that the warrants should have only been for 10,000 shares instead of 100,000. Despite the error, LEI kept Gennock's $30,000. From December 13, 2010, to January 13, 2011, Gennock and O'Keefe negotiated regarding the sale of the 30,000 shares, as well as for the purchase of additional warrants and shares.

On January 13, 2011, O'Keefe informed Gennock that LEI had obtained additional funding and that the "cleanest" transaction was for Gennock to keep the 30,000 shares of stock, and for LEI to keep the $30,000. Gennock agreed, and also agreed to abandon his claims to the additional 70,000 warrants. However, when Gennock obtained the stock certificates from LEI, the stock certificates contained restrictions. As a result of the restrictions, the stocks are not marketable or fungible.

Gennock contacted LEI and spoke with the new CFO, Andrew Lai ("Lai"), about the restrictions on the 30,000 shares of stock. Lai said the stock was restricted, and that Gennock should talk to LEI's attorneys. However, Gennock never agreed that the 30,000 shares were to be restricted. An LEI attorney told Gennock that the shares could be sold pursuant Rule 144 of the Securities Act, but that the agreement with O'Keefe might affect the holding period required by Rule 144. Gennock again contacted Lai to confirm that the shares could be sold, but Lai took the position that Gennock was not entitled to the 30,000 shares and that Gennock needed to return the shares. LEI attorneys later confirmed this position.

Gennock filed suit in this Court on June 13, 2011, for breach of oral contract, promissory estoppel, declaratory relief, violation of § 10(b) of the Securities Exchange Act, fraud, and unjust enrichment.

# DEFENDANT'S MOTION

*Defendant's Argument*

LEI argues that the Written Agreement contains a mandatory forum selection clause which sets venue in Nevada. The clause also establishes that the Written Agreement is to be construed under the laws of Nevada. Gennock's filing suit in the Eastern District of California was improper, and the court does not have jurisdiction pursuant to the forum selection clause. Dismissal or transfer of this case to the District of Nevada is appropriate.

Additionally, in reply, LEI argues *inter alia* that Gennock's attempts to circumvent the mandatory forum selection clause are spurious. Other courts have rejected the argument that a subsequent oral agreement supercedes a prior written agreement with a forum selection clause. See, e.g., Sixty-Two First St., LLC v. CapitalSource Finance, LLC, 2011 WL 2182915 (N.D. Cal. Jun. 6, 2011). The Complaint's allegations show that Gennock's causes of action concern and relate to the Written Agreement. Thus, the forum selection clause governs this matter.

*Plaintiff's Opposition*

Gennock argues that LEI's motion is meritless because the Complaint clearly alleges a breach of oral contract. The oral contract was different from the Written Agreement. The oral contract contained no forum selection clause. Because the oral contract at issue contained no forum selection clause, transfer and/or dismissal is not appropriate.

*Contractual Provision At Issue*

LEI identifies Section 6(d) of the Written Agreement as the section at issue. Section 6(d) is entitled "Jurisdiction," and reads in pertinent part:

> All questions concerning the construction, validity, enforcement, and interpretation of this Warrant shall be determined in accordance with the laws of the State of Nevada. Each party hereby irrevocably submits to the jurisdiction of the state of and federal courts sitting in the State of Nevada, and hereby irrevocably waives and agrees not to assert in any such suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. . . . Each party hereby irrevocably waives any right it may have and agrees not to request a jury trial for the adjudication of any dispute hereunder or in connection herewith or arising out of this agreement or any transaction contemplated.

Written Agreement § 6(d).

*Legal Standard*

Motions that seek to enforce forum selection clauses are treated as motions to dismiss for improper venue under Rule 12(b)(3). Doe 1 v. AOL, LLC, 552 F.3d 1077, 1081 (9th Cir. 2009); Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). As such, the pleadings need not be accepted as true and the court may consider supplemental written materials and facts outside of the pleadings. See AOL, 552 F.3d at 1081; Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1337 (9th Cir. 2004); Argueta, 87 F.3d at 324. If there are contested factual issues, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party. Murphy, 362 F.3d at 1138. Alternatively, the district court may hold a pre-trial evidentiary hearing on the disputed facts, or may deny the motion with leave to re-file if further development of the record would eliminate any genuine factual issues. Id. at 1139-40.

Federal law is applied in order to interpret a forum selection clause. Simonoff v. Expedia, Inc., 643 F.3d 1202, 1205 (9th Cir. 2011); AOL, 552 F.3d at 1081. "The plain language of the contract should be considered first, with the understanding that the common or normal meaning of the language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it." Simonoff, 643 F.3d at 1205; AOL, 552 F.3d at 1077. A forum selection clause will be enforced where venue is specified through mandatory language. Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir.1989); see also John Boutari & Son, Wines & Spirts, S.A. v. Attiki Imp. & Distrib., Inc., 22 F.3d 51, 52-53 (2d Cir. 1994). However, if the language of the forum selection clause is non-mandatory or permissive, the forum selection clause will not preclude suit elsewhere. Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995); Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987); see also John Boutari, 22 F.3d at 52-53. To be mandatory, the clause must contain language that clearly designates a particular forum as the exclusive forum. Northern Cal., 69 F.3d at 1037; see United In'tl Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1223 (10th Cir. 2000). "When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." Docksider, 875 F.2d at 764; see

1  S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705, 708 (2d Cir. 2010); John Boutari, 22 F.3d at
2  52-53.

*Discussion*

LEI is correct that other courts in this circuit have rejected attempts to avoid a forum selection clause through allegations of a subsequent oral contract.  In *Sixty-Two First St.*, the forum selection clause read that the parties submitted to the personal jurisdiction of a Maryland court as to "any suit, action, or proceeding arising from or related to [the agreement] or loan" and that "any such action, suit, or proceeding may be brought exclusively in any state or federal court [in Montgomery County, Maryland]."  Sixty-Two First St., 2011 WL 2182915 at *1.  The *Sixty-Two First St*. court found that a subsequent oral agreement "arises from or is related to the loan agreement or the loan," and thus, fell squarely within the plain language of the forum selection clause.  See id. at *2.  The court then dismissed the case on the basis of the forum selection clause.  See id. at *3.  The key in *Sixty-Two First St.* was the language of the particular forum selection clause.  That forum selection clause contained broad language and, through operation of the various subclauses, was mandatory in nature.  Here, although LEI states numerous times that the forum selection clause at issue is mandatory, the Court cannot agree.

Forum selection clauses are ordinarily interpreted consistent with their language's "plain meaning."  See Simonoff, 643 F.3d at 1205; Hunt Wesson, 817 F.2d at 77.  A plain reading of Section 6(d) shows that it is not a mandatory forum selection clause.  Conspicuously absent from Section 6(d) is any provision that actually commands where a lawsuit is to be filed.  Indeed, the term "venue" is used only once, and that is in a clause that waives the parties's ability to argue that venue in Nevada is improper.  There is nothing that expressly identifies Nevada as the venue for a lawsuit, let alone language that clearly designates Nevada as the exclusive forum.  See United In'tl, 210 F.3d at 1223; Northern Cal., 69 F.3d at 1037.

Section 6(d) does state that the parties submit to the jurisdiction of Nevada.  However, the rule is that merely specifying jurisdiction in a particular state does not create a mandatory clause; rather, the intent to make jurisdiction exclusive must appear.  See K&V Scientific Co., Inc. v. BMW, 314 F.3d 494, 499 (10th Cir. 2002); John Boutari, 22 F.3d at 52-53; Docksider, 875 F.2d

at 764.  Here, the Court does not see an intent to make Nevada the exclusive jurisdiction.  The words "exclusive," "sole," or "only" are not found in Section 6(d), see K&V, 314 F.3d at 500, and there is no language that prohibits the parties from filing a lawsuit in states other than Nevada.  It is true that the there is also a choice of law clause that specifies Nevada law as controlling.  However, the inclusion of a choice of law clause does not itself sufficiently show an intent to make Nevada the exclusive jurisdiction.  See K&V, 314 F.3d at 496, 499-500 (clause that set jurisdiction as Munich, Germany, and that set governing law as the laws of Germany held to be permissive); John Boutari, 22 F.3d at 52-53 (clause that set jurisdiction as Greece and set the governing law as the laws of Greece held to be permissive); Hunt Wesson, 817 F.2d at 77 (clause that set jurisdiction as Orange County, California and set the governing law as California law held to be permissive).  Section 6(d) also states that the parties irrevocably submit to the jurisdiction of Nevada.  However, the plain language of such a clause is that the parties cannot withdraw their consent to Nevada jurisdiction.  It does not say that the parties cannot bring suit in a different jurisdiction, nor does it state that the parties cannot consent or cannot be subject to other jurisdictions.  Finally, Section 6(d) also states that the parties waive defenses that challenge the propriety or convenience of Nevada as a venue.  However, that the parties agree to not challenge venue if a suit is brought in Nevada does not mean that a lawsuit cannot be brought in another state.

  This case is very similar to *Hunt Wesson*.  Much like Section 6(d), the forum selection clause in *Hunt Wesson* read: "the laws of the State of California shall govern the validity, construction, interpretation and effect of this contract. The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract."  Hunt Wesson, 817 F.2d at 76.  The Ninth Circuit held that the forum selection clause was permissive, and that the district court erred by remanding the case back to state court on the basis of the forum selection clause.  See id. at 78.  The Ninth Circuit explained in pertinent part:

> Here, the plain meaning of the language is that the Orange County courts shall have jurisdiction over this action. The language says nothing about the Orange County courts having exclusive jurisdiction. The effect of the language is merely

6

> that the parties consent to the jurisdiction of the Orange County courts. Although the word 'shall' is a mandatory term, here it mandates nothing more than that the Orange County courts have jurisdiction. Thus, [defendant] cannot object to litigation in the Orange County Superior Court on the ground that the court lacks personal jurisdiction. Such consent to jurisdiction, however, does not mean that the same subject matter cannot be litigated in any other court. In other words, the forum selection clause in this case is permissive rather than mandatory.

Id. at 77.

The same analysis applies in this case. The plain meaning of Section 6(d) is that Nevada courts have jurisdiction, but do not have exclusive jurisdiction. The consent to jurisdiction does not mean that other courts do not also have jurisdiction. The waiver of certain venue defenses, as well as personal jurisdiction, simply means that, if a lawsuit is filed in Nevada, the identified defenses will not be asserted. The Court sees nothing in Section 6(d) that mandates Nevada as the exclusive jurisdiction. Section 6(d) is a permissive forum selection clause that does not prohibit a lawsuit from being filed in this Court. See K&V, 314 F.3d at 499; Northern Cal., 69 F.3d at 1037; John Boutari, 22 F.3d at 52-53; Hunt Wesson, 817 F.2d at 77.

Alternatively, the above analysis is a reasonable interpretation of the nature of Section 6(d). Where there is an ambiguity in a contract, the ambiguous language is construed against the drafter. See Hunt Wesson, 817 F.2d at 78. The Written Agreement is on LEI letterhead and appears to have been drafted by LEI. See Court's Docket Doc. No. 5-1. Therefore, if there is an ambiguity regarding the mandatory or permissive nature of Section 6(d), that ambiguity would be resolved against LEI, and Section 6(d) would be construed as a permissive forum selection clause. See Hunt Wesson, 817 F.2d at 78. As a permissive venue provision, Section 6(d) does not require that this lawsuit be litigated in Nevada. See id. at 77-78.

## **CONCLUSION**

LEI moves under Rule 12(b)(3) to either dismiss this case or transfer the case to the District of Nevada on the basis of a forum selection clause. Although LEI contends that the forum selection clause is mandatory, the forum selection clause is actually permissive. As a permissive clause, Section 6(d) does not require or mandate that this lawsuit be brought in Nevada. Dismissal is not appropriate, and Defendant's Rule 12(b)(3) motion will be denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Rule 12(b)(3) motion is DENIED, and
2. Defendant may file a response to Plaintiff's complaint within twenty (20) days of service of this order.

IT IS SO ORDERED.

Dated:   October 5, 2011

CHIEF UNITED STATES DISTRICT JUDGE